453 So.2d 1355 (1984)
UNITED STATES FIDELITY AND GUARANTY COMPANY, et al., Appellants,
v.
DEPARTMENT OF INSURANCE of the state of florida and Bill Gunter, As Insurance Commissioner of the State of Florida, Appellees.
No. 64405.
Supreme Court of Florida.
July 5, 1984.
*1357 John K. Aurell, John Radey and Michael L. Rosen of Holland & Knight, Tallahassee; John M. McNatt, Jr., Jack W. Shaw, Jr. and J. Stephen O'Hara, Jr. of Mathews, Osborne, McNatt, Gobelman & Cobb, Jacksonville; and Martin B. Unger of Swann & Haddock, Orlando, for appellants.
Daniel Y. Sumner and David A. Yon, Department of Insurance, Tallahassee, for appellees.
BOYD, Chief Justice.
This cause is before the Court on appeal from a judgment of the Circuit Court of the Second Judicial Circuit, sitting in Leon County. An appeal of the judgment was taken to the First District Court of Appeal and that court certified the judgment to be of great public importance and to require immediate resolution by this Court. Having exercised our discretion to review the judgment, we have plenary jurisdiction of the appeal. Art. V, § 3(b)(5), Fla. Const.
The judgment before us on appeal held section 627.066, Florida Statutes (1981), commonly referred to as the automobile insurance excess profits law, constitutional. After carefully considering all of the appellants' challenges to the validity of the law, we find it constitutional in all respects and therefore affirm the judgment of the circuit court.
The legislature first enacted the excess profits law in 1977. Ch. 77-468, § 23, Laws of Fla. That law required private passenger automobile insurers to file with the Department of Insurance forms containing information about earned premiums, losses and loss adjustment expenses, administrative and selling expenses incurred in Florida, and policyholder dividends. The law also required the insurers to file a schedule of their loss adjustment expenses for the three most recent accident years beginning with 1976. Excess profits were calculated to be amounts in excess of five percent of the anticipated underwriting profit. Finally, the law authorized the Department of Insurance to order the return of excess profits to policyholders and to *1358 exempt certain insurers from complying with the reporting requirements. Specifically, the law provided:
(6) If the insurer group has realized an excessive profit, the department may order a return of the excessive amounts to policyholders.
(7) In determining what action should be taken if excessive profits are realized, the department shall consider the following as they relate to Florida private passenger automobile insurance:
(a) The underwriting profit or loss of the insurer group in prior years.
(b) The financial strength and stability of the insurer group.
(c) The loss development patterns of the insurer group.
(8) The department may excuse an insurer from complying with these reporting requirements if the volume of business written by the insurer would not justify the expense of the reporting requirement.
§ 627.066(6)-(8), Fla. Stat. (1977).
After receiving an order to refund their excess profits, Government Employees Insurance Company, Liberty Mutual Fire Insurance Company, and Liberty Mutual Insurance Company filed suits in two circuit courts, seeking to have section 627.066 declared unconstitutional. Their main contention was that subsections six through eight gave the Department of Insurance unbridled discretion to order refunds of excess profits and therefore constituted an unconstitutional delegation of legislative authority. The trial judges in both cases agreed and granted the insurers' motions for summary judgment, holding section 627.066 to be unconstitutional.
The department appealed and at the same time sought from the legislature an amendment to the statute to abolish the defects found by the circuit court judges. The legislature obliged by enacting Chapter 80-236, Laws of Florida. Section 26 of that chapter amended and renumbered subsections six through eight of section 627.066 to provide as follows:
(7) If the insurer group has realized an excessive profit, the department shall order a return of the excessive amounts after affording the insurer group an opportunity for hearing and otherwise complying with the requirements of chapter 120. Such excessive amounts shall be refunded in all instances unless the insurer group affirmatively demonstrates to the department that the refund of the excessive amounts will render a member of the insurer group insolvent under the provisions of the Florida Insurance Code.
(8) The excessive amount shall be refunded on a pro rata basis in relation to the final compilation year earned premiums to the voluntary private passenger automobile policyholders of record of the insurer group on December 31 of the final compilation year.
§ 627.066(7) and (8), Fla. Stat. (1981). Section 27 of the law made these new provisions retroactive:
(13) Since it appears to the Legislature that private passenger automobile insurer groups have realized excessive profits during all or part of the years 1977, 1978, and 1979 and that such profits were realized in part due to statutory changes for which rates were not adequately adjusted, it is the desire and intent of the Legislature that the provisions of this section, as amended by chapter 80-236, Laws of Florida, shall apply retroactively to excessive profits realized during the years 1977, 1978, and 1979. In the event that such retroactive application is judicially determined to be unconstitutional, it is the intent of the Legislature that the act be given prospective application as stated hereinafter. Prior to July 1, 1982, the data required by this section shall be submitted to the department for the years 1979, 1980, and 1981. Excessive profits shall be calculated in accordance with the provisions of this section. However, only the excessive profits realized *1359 by the insurer group in 1981 shall be refunded to policyholders, and such refunds shall be made in accordance with this section. Prior to July 1, 1983, the data required by this section shall be submitted to the department for the years 1980, 1981, and 1982. Excessive profits shall be calculated in accordance with this section; however, refunds shall only be made for excessive profits realized in the years 1981 and 1982. Thereafter, excessive profits shall be calculated and refunded on the basis of 3 years as set forth in this section.
§ 627.066(13), Fla. Stat. (1981).
When the department issued notices ordering the refund of excessive profits earned from 1977 through 1979, several insurance companies, including all of the appellants in this case, filed actions in circuit court, seeking to have the 1980 amendments declared unconstitutional. The trial court granted judgment on the pleadings in favor of the insurance companies on the ground that the 1980 law was unconstitutional in its retroactive application to excessive profits realized in the years 1977, 1978 and 1979 because it impaired rights and obligations under contracts entered into before the effective date of the law. The department appealed to the district court of appeal, which in turn certified the case to this Court as one of great public importance requiring immediate resolution by this Court. We reversed, finding that it was "the 1977 excess profits law, and not the 1980 amendments, that provides the basis for the department's authority to order a return of excess profits." Department of Insurance v. Teachers Insurance Co., 404 So.2d 735, 741 (Fla. 1981). We reasoned that the insurance companies were unaffected by the 1980 amendments, which merely removed the department's discretion not to order a refund, unless they could "allege and prove, which they have not, that but for the 1980 amendment, the department would not have initiated the refund orders." Id.
When the case returned to the trial court, appellants amended their complaints to allege that but for the 1980 amendment the department would not have issued refund notices because the 1977 law had been declared unconstitutional. Before trial the trial court granted partial summary judgment, finding the 1977 law to be unconstitutional. However, at the end of the trial, the trial court entered a final judgment upholding the constitutionality of section 26, chapter 80-236 and finding that the appellants had failed to prove that the department would not have required the excess profits earned since 1977 to be refunded had section 23, chapter 77-468, Laws of Florida, not been replaced by section 26, chapter 80-236, Laws of Florida. The appellants appealed to the district court of appeal which certified the case to be of great public importance requiring immediate resolution by this Court.
Appellants argue that the department lacked the authority to issue refund notices under the 1977 law since it had been declared unconstitutional. They claim the department must abide by the earlier rulings that the 1977 law was unconstitutional since it dismissed its appeals in those two cases where it was held unconstitutional, and since it did not cross-appeal the lower court's partial summary judgment reaffirming those earlier decisions. Appellants further argue that the 1977 law could not have served notice upon them that any excess profits earned from 1977 through 1979 would be subject to refund and that the 1980 amendment could not validate the earlier law nor be retroactively applied.
We do not agree with appellant's assertions that the 1977 law cannot be used by the department as a basis for its authority to issue refund orders. The fact that the department dismissed its appeals from those earlier circuit court rulings rendered those judgments final and binding on the parties to those lawsuits. But the department is not precluded from arguing in the present litigation that the 1977 law is a *1360 valid source of authority. Even though we adhere to our ruling in Teachers on that point and even though it is not clear to us that the 1977 law was an improper delegation of legislative authority, we will now address the question we avoided in Teachers of whether 1980 amendment authorizing the department to order refunds of excess profits earned since 1977 is an unconstitutional impairment of contracts. See Art. I, § 10, Fla. Const. We hold that section 627.066(13), Florida Statutes (1981), does not violate this constitutional provision and that the department is therefore authorized to order refunds of excess profits earned since 1977.
In contract clause cases such as this, we have decided to adopt the method of analysis used by the United States Supreme Court. Pomponio v. Claridge of Pompano Condominium, Inc., 378 So.2d 774 (Fla. 1979). This method requires a balancing of a person's interest not to have his contracts impaired with the state's interest in exercising its legitimate police power. In a case similar to this the United States Supreme Court recently outlined the main factors to be considered in applying this balancing test.
The threshold inquiry is "whether the state law has, in fact, operated as a substantial impairment of a contractual relationship." Allied Structural Steel Co., 438 U.S. 234, at 244, 98 S.Ct. [2716], at 2722 [57 L.Ed.2d 727]. See United States Trust Co., 431 U.S. 1, at 17, 97 S.Ct. [1505], at 1515 [52 L.Ed.2d 92]. The severity of the impairment is said to increase the level of scrutiny to which the legislation will be subjected. Allied Structural Steel Co., 438 U.S., at 245, 98 S.Ct., at 2723. Total destruction of contractual expectations is not necessary for a finding of substantial impairment. United States Trust Co., 431 U.S., at 26-27, 97 S.Ct., at 1519-1520. On the other hand, state regulation that restricts a party to gains it reasonably expected from the contract does not necessarily constitute a substantial impairment. Id., at 31, 97 S.Ct., at 1522, citing El Paso v. Simmons, 379 U.S. 497, 515, 85 S.Ct. 577, 587, 13 L.Ed.2d 446 (1965). In determining the extent of the impairment, we are to consider whether the industry the complaining party has entered has been regulated in the past. Allied Structural Steel Co., 438 U.S., at 242, n. 13, 98 S.Ct., at 2721, n. 13, citing Veix v. Sixth Ward Bldg. & Loan Ass'n, 310 U.S. 32, 38, 60 S.Ct. 792, 794-795, 84 L.Ed. 1061 (1940) ("When he purchased into an enterprise already regulated in the particular to which he now objects, he purchased subject to further legislation upon the same topic"). The Court long ago observed: "One whose rights, such as they are, are subject to state restriction, cannot remove them from the power of the State by making a contract about them." Hudson Water Co. v. McCarter, 209 U.S. 349, 357, 28 S.Ct. 529, 531, 52 L.Ed. 828 (1908).
If the state regulation constitutes a substantial impairment, the State, in justification, must have a significant and legitimate public purpose behind the regulation, United States Trust Co., 431 U.S., at 22, 97 S.Ct., at 1517, such as the remedying of a broad and general social or economic problem. Allied Structural Steel Co., 438 U.S., at 247, 249, 98 S.Ct. at 2723-2725. Furthermore, since [Home Building & Loan Ass'n v.] Blaisdell, [290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413] the Court has indicated that the public purpose need not be addressed to an emergency or temporary situation. United States Trust Co., 431 U.S., at 22, n. 19, 97 S.Ct., at 1518, n. 19; Veix v. Sixth Ward Bldg. & Loan Ass'n, 310 U.S., at 39-40, 60 S.Ct., at 795-796. One legitimate state interest is the elimination of unforeseen windfall profits. United States Trust Co., 431 U.S. at 31, n. 30, 97 S.Ct., at 1522, n. 30. The requirement of a legitimate public purpose guarantees that the State is exercising its police power, rather than providing a benefit to special interests.

*1361 Once a legitimate public purpose has been identified, the next inquiry is whether the adjustment of "the rights and responsibilities of contracting parties [is based] upon reasonable conditions and [is] of a character appropriate to the public purpose justifying [the legislation's] adoption." United States Trust Co., 431 U.S., at 22, 97 S.Ct., at 1518. Unless the State itself is a contracting party, see id., at 23, 97 S.Ct., at 1518, "[a]s is customary in reviewing economic and social regulation, ... courts properly defer to legislative judgment as to the necessity and reasonableness of a particular measure." Id., at 22-23, 97 S.Ct., at 1518.
Energy Reserves Group, Inc. v. Kansas Power and Light Co., 459 U.S. 400, 103 S.Ct. 697, 704-06, 74 L.Ed.2d 569 (1983) (footnotes omitted). In applying these factors, the United States Supreme Court held that a Kansas statute which imposed price controls on the sale of intrastate natural gas differing from the prices agreed to by the parties was not an unconstitutional impairment of contract. In reaching this decision, the Court emphasized "the fact that the parties [were] operating in a heavily regulated industry." Id. 103 S.Ct. at 706. The Court also reasoned that Kansas had a legitimate state interest in exercising "its police power to protect consumers from the escalation of natural gas prices caused by deregulation." Id. 103 S.Ct. at 708.
Similarly, in this case, the appellants are operating in a heavily regulated industry. See Florida Insurance Code, chapters 624-632, Florida Statutes (1981). For years the legislature has regulated the contents of insurance policies and has authorized the department to approve or disapprove insurance policy forms. See §§ 627.410, .411, .413, Florida Statutes (1981). Moreover, when chapter 77-468, Laws of Florida, was enacted, the insurers were put on notice that any funds received exceeding five percent of their anticipated profit under the statute might be subject to refund orders and therefore they did not obtain a vested right to those funds. Department of Insurance v. Teachers Insurance Co. Since section 627.066(13) allows insurers to keep their anticipated profits plus five percent, and since the insurers knew when they entered into these contracts that excess profits might have to be refunded, the statute does not operate as a substantial impairment of a contractual relationship.
Furthermore, what minimal impairment does exist is outweighed by the state's interest in eliminating unforeseen windfall profits. Section 627.066(13) specifically states that excess profits were realized in the years of 1977-1979 due to statutory changes. These changes were made in response to escalating insurance costs in order to protect policyholders from paying exorbitantly high premiums. Changes were made to reduce the insurers' costs of doing business so that these savings could be passed on to policyholders in the form of lower premiums. Since it was impossible to calculate in advance the precise impact the statutory changes would have on insurers' earnings, the legislature deemed it fit to require the insurers to file information on their earnings and expenses and authorized the Department of Insurance to calculate and order refunds of any excess profits. We do not find this method of protecting policyholders from paying exorbitantly high premiums to be unreasonable.
Some of the appellants argue that section 627.066 violates equal protection by discriminating against small insurance companies and insurance companies with declining premiums. They presented evidence at the trial showing that such companies are subject to being required to refund a disproportionate share of the excess profits. They contend that smaller companies are more likely to reach the threshold requirements for refunding excess profits because they experience greater fluctuations in profits. They also presented evidence *1362 showing that because accounting practices mismatch revenues and expenses, companies with decreasing premiums will often show excess profits when there are actually none.
We find these arguments unpersuasive. The statute does not on its face classify insurers into different categories.
The proper classification for purposes of equal protection analysis is not an exact science, but scouting must begin with the statutory classification itself. Only when it is shown that the legislation has a substantial disparate impact on classes defined in a different fashion may analysis continue on the basis of the impact on those classes.
Califano v. Boles, 443 U.S. 282, 293-94, 99 S.Ct. 2767, 2774, 61 L.Ed.2d 541 (1979). Since the statute places all insurers in the same category, evidence pertaining to the disproportionate impact the statute may have on particular subgroups of insurers does not present a substantial question of whether the statute violates equal protection.
Next appellants argue that section 627.066 is not reasonably related to the legislative goal of protecting policyholders from exorbitantly high rates. They contend that the statute may actually cause higher rates by encouraging inefficient management and discouraging competition. The fact that a statute may not actually accomplish its intended goals is not a sufficient reason for declaring the statute unconstitutional. The test is whether the legislature at the time it enacts the statute has a reasonable basis for believing that the statute will accomplish a legitimate legislative purpose. See In re Estate of Greenberg, 390 So.2d 40 (Fla. 1980); Northridge General Hospital v. City of Oakland Park, 374 So.2d 461 (Fla. 1979). In this case the legislature believed that because of changes in the insurance laws, some insurers would benefit greatly and earn profits far in excess of what was anticipated when their rates were approved. We find the legislature had a reasonable basis for believing that authorizing the department to order refunds of such excess profits would protect policyholders from paying exorbitantly high rates.
Some of the appellants also argue that the statute is unconstitutionally vague and ambiguous. Specifically, they claim that the terms "due recognition of investment income" and "loss development factor" are so vague that persons of common intelligence must guess at their meaning. However, there was evidence that these terms denote actuarial concepts that have a specific meaning. Because these concepts can be specifically defined and consistently applied, they are not unconstitutionally vague or ambiguous. See Florida Welding & Erection Service, Inc. v. American Mutual Insurance Co., 285 So.2d 386 (Fla. 1973).
The next point on appeal is that section 627.066 is unconstitutional because it contains an irrebuttable presumption that insurers who earn excess profits are charging exorbitantly high premiums. In statutes regulating economic matters, a legislative presumption does not constitute a denial of due process if there is some rational connection between the fact proved and the ultimate fact presumed. Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976). Since we have already found that there is a reasonable basis for believing that section 627.066 serves the purpose of protecting policyholders from exorbitantly high rates, it follows that this section does not contain an unconstitutional irrebuttable presumption.
Finally, appellants argue that chapter 80-236 violates the requirement of article III, section 6, of the Florida Constitution that every law shall embrace only one subject. We find this argument to be without merit. Sections 26 and 27 of chapter 80-236 pertain, along with the rest of *1363 chapter 80-236, to the general subject of insurance. Thus the law does not embrace more than one subject. Moreover the effect of sections 26 and 27 is briefly expressed in the title of chapter 80-236. We see no infirmity under article III, section 6. See The Board of Public Instruction of Broward County v. Doran, 224 So.2d 693 (Fla. 1969).
We find section 627.066, Florida Statutes (1981), to be consistent with constitutional requirements. The judgment of the circuit court is therefore affirmed.
It is so ordered.
OVERTON, ALDERMAN and SHAW, JJ., concur.
McDONALD, J., concurs in part and dissents in part with an opinion.
McDONALD, Justice, concurring in part/dissenting in part.
I agree that chapter 80-236, Laws of Florida, is constitutional for all insurance contracts entered into after its effective date, June 27, 1980. I concede that there is a valid argument that it may apply to proceeds received by insurance carriers after that date even though the contracts for those proceeds antedated this chapter. I fervently disagree, however, that this 1980 statute can reach back and mandate a return of monies received by an insurance carrier before June 27, 1980. Chapter 77-468, section 23, Laws of Florida, which sought to require a refund, cannot support the refund because it was and is an invalid law. It has no effect.
The insurance companies and their insureds contracted for insurance coverage. The companies earned their premiums by furnishing the insurance coverage. The obligations were fixed. To require a refund of premiums already received is a clear violation of the constitutional prohibition against enacting a statute which impairs an existing contract. I don't think anyone would seriously suggest that had the legislature authorized an insurance company to assess its policyholders for additional premiums because its losses were too great such a statute would be constitutional. Certainly not, because that too would have impaired contracts. It works both ways.