ERVIN, Chief Judge.
Appellant, John Deere Insurance Company, appeals from a final order of the Department of Insurance (Department); requiring appellant to refund monies pursuant to Section 627.215, Florida Statutes (1981), the Workers’ Compensation Excessive Profits Law (WCEPL). We affirm in part and reverse in part.
In March 1983, the Department advised appellant that pursuant to the WCEPL (1981), and on the basis of data submitted by appellant for the period August 1, 1979 to December 31, 1981, the Department intended to issue an order requiring the refund of excessive profits totaling $497,583. Appellant filed a timely request for a section 120.57 formal hearing. Prior to the hearing, the parties resolved factual disputes concerning the amount of excessive profits yielded by application of the statutory formula, and agreed that if the refund order were appropriately entered, the amount of refund would be $362,182. Appellant then withdrew its petition for a formal hearing and the parties agreed to an order directing a refund in the stipulated amount, but expressly preserving for appeal both constitutional and nonconstitu-tional legal issues.
Appellant first argues that the instant refund order, insofar as it is based in part on the authority of the WCEPL, as originally enacted in 1979, cannot be sustained because the 1979 WCEPL was an unlawful delegation of legislative authority. We need not reach that issue for two reasons: First, the Department issued the instant refund order pursuant to the 1981 WCEPL, which included the 1980 amendments. Chapter 80-236, Section 21, Laws of Florida. The Department did not apply the allegedly unconstitutional provisions of the 1979 WCEPL in issuing the instant refund order, since the 1980 amendments revised those provisions. Compare Section 627.215(6), (7) and (8), Florida Statutes (1979) with Section 627.215(6), (7) and (8), Florida Statutes (1981). Second, the 1979 WCEPL remained unchallenged and in full force from its August 1, 1979[1] effective date to July 1, 1980, the effective date of the 1980 amendments. Even if we were to hold the 1979 WCEPL unconstitutional, appellant was put on notice by the 1979 WCEPL that any excessive profits were subject to a refund order; therefore, appellant did not obtain a vested right to such funds after August 1,1979. United States Fidelity and Guaranty Company v. Department of Insurance, 453 So.2d 1355, 1361 (Fla.1984) [hereinafter: U.S.F. & (?.]; Department of Insurance v. Teachers Insurance Company, 404 So.2d 735, 742 (Fla. 1981). Under this reasoning, appellant does not have a vested right to excessive profits earned between August 1, 1979 and July 1, 1980.
Appellant also argues that the 1981 WCEPL is unconstitutional because it violates due process and is an excessive delegation of legislative authority. As to the latter ground, at issue is the calculation of “anticipated underwriting profit”, a key element in the determination of whether an insurer has realized an excessive profit. Section 627.215(2)(a), Florida Statutes (1981). Section 627.215(2)(b), Florida Statutes (1981), states in pertinent part:
As used in this section with respect to any 3-year period, “anticipated underwriting profit” means the sum of the dollar amounts obtained by multiplying, for each rate filing of the insurer group in effect during such period, the earned premiums applicable to such rate filing during such period by the percentage factor included in such rate filing for *387 profit and contingencies, such percentage factor having been determined with due recognition to investment income from funds generated by Florida business.
(e.s.) Appellant contends that the term “due recognition to investment income”, unexplained by the statute and not refined by the Department through administrative rule, grants the Department unbridled discretion to manipulate the amount of anticipated underwriting profit and ultimately the amount of excessive profit.
The Motor Vehicle Excessive Profits Law (MVEPL), Section 627.066, Florida Statutes (1983), contains language identical to Section 627.215(2)(a). In U.S.F. & G., the court examined the term “due recognition to investment income”, as used in the MVEPL, section 627.066(3)(b), stating:
Some of the appellants also argue that the statute is unconstitutionally vague and ambiguous. Specifically, they claim that the terms “due recognition of investment income” and “loss development factor” are so vague that persons of common intelligence must guess at their meaning. However, there was evidence that these terms denote actuarial concepts that have a specific meaning. Because these concepts can be specifically defined and consistently applied, they are not unconstitutionally vague or ambiguous.
453 So.2d at 1362. Even though the U.S.F. & G. appellants challenged the statute there in question on vague and ambiguous grounds, instead of on unlawful delegation grounds, U.S.F. & G. is highly persuasive authority for upholding the statute here under attack. The supreme court recognized that “due recognition to investment income” is an actuarial concept that can be specifically defined and consistently applied. Similarly, the Department, in determining the insurer’s “anticipated underwriting profit”, merely looks to the insurer’s original rate filing and uses the same percentage factor utilized by the insurer for determining its profit and contingencies at the time the latter files its rate with the Department. The Department’s interpretation, then, falls within the ambit of the provisions of Section 627.215(2)(b), Florida Statutes. Given the specific meaning of the term, “due recognition to investment income”, together with the lack of evidence that the Department inconsistently applied the concept and the complexity of rate regulation, we conclude that the WCEPL contains sufficient standards to enable the Department and the courts to determine whether the Department is carrying out the legislature’s intent. Cf Department of Insurance v. Southeast Volusia Hospital District, 438 So.2d 815, 819 (Fla.1983). To require constant legislative supervision of the technical determination of “anticipated underwriting profit” is neither practical nor required by the constitution. Id. at 820.
Appellant’s first due process argument is that the means employed by the WCEPL (1981) do not bear a reasonable relationship to the goal of protecting “policyholders and the public against the adverse effects of excessive ... insurance rates”. Section 627.031(2), Florida Statutes. A similar argument was raised against the MVEPL in U.S.F. & G. The supreme court rejected the argument, stating:
[Ajppellants argue that section 627.066 is not reasonably related to the legislative goal of protecting policyholders from exorbitantly high rates. They contend that the statute may actually cause high rates by encouraging inefficient management and discouraging competition. The fact that a statute may not actually accomplish its intended goals is not a sufficient reason for declaring the statute unconstitutional. The test is whether the legislature at the time it enacts the statute has a reasonable basis for believing that the statute will accomplish a legitimate legislative purpose_ In this case the legislature believed that because of changes in the insurance laws, some insurers would benefit greatly and earn profits far in excess of what was anticipated when their rates were approved. We find the legislature had a reasonable ba *388 sis for believing that authorizing the department to order refunds of such excess profits would protect policyholders from paying exorbitantly high rates.
453 So.2d at 1362. In enacting the WCEPL, the legislature believed that with the 1979 changes in the Workers’ Compensation Law, including the legislation creating wage loss which drastically reduced scheduled compensation benefits previously available, some workers’ compensation insurers would earn profits excessively higher than those anticipated when their rates were approved. The legislature reasonably believed, as it did with the MVEPL, that refunds would protect policyholders and the public. Thus, the WCEPL is reasonably related to the stated goal of protecting policyholders and the public. Further, appellant’s argument that the WCEPL is based on the premise that excessive profits reflect excessive premiums has no merit according to U.S.F. & G., 453 So.2d at 1362.
Appellant’s second due process contention concerns that provision in Section 627.-215(7), Florida Statutes (1981), which requires that excessive profits be refunded to “policyholders of record of the insurer group on December 31 of the final compilation year.” The argument is that the WCEPL arbitrarily advantages some policyholders, while disadvantaging others, because it conditions entitlement to refunds to one’s status as a policyholder on the last day of the three-year reporting period. We disagree. At the outset we note that no issue of appellant’s standing to challenge the provision has been raised by the Department. Although the general rule is that the constitutionality of a provision of a statute cannot be contested by a party whose rights or duties are not affected by it, an exception is recognized if the provision is of such nature that it renders invalid another provision or provisions of the statute which directly affect the party’s rights or duties. State ex rel. Clarkson v. Phillips, 70 Fla. 340, 70 So. 367 (1915). If we were to hold the policyholder of record provision invalid, the result would prevent the legislative intent of the WCEPL from being accomplished. The refund mechanism is not severable from the remainder of the WCEPL, since without it, the statute could not state which policyholders are entitled to refunds. Thus, any such action would render invalid those portions of the WCEPL that do affect appellant’s rights and duties. Eastern Air Lines, Inc. v. Department of Revenue, 455 So.2d 311, 317 (Fla.1984). Accordingly, we address the issue raised.
The test to determine whether the WCEPL refund mechanism violates the due process clause is whether it bears a reasonable relationship to the statute’s objectives and is not discriminatory or arbitrary. Johns v. May, 402 So.2d 1166, 1169 (Fla. 1981). We find that the refund mechanism bears a reasonable relationship to the objective of protecting policyholders from the adverse effects of excessive insurance rates by providing an orderly mechanism that is administratively reasonable for both the Department and insurers. Admittedly, an individual who holds a policy every day but the last day of the three-year reporting period would not receive a refund under the WCEPL. Courts, however, do not require perfection in statutory classifications; indeed practical, but unscientific accommodations often are necessary. “Some inequality in result is not enough to vitiate on due process grounds a legislative classification grounded in reason.” Lasky v. State Farm Insurance Company, 296 So.2d 9, 17 (Fla.1974). The December 31 record date requirement coincides with the three-year reporting period used to calculate whether an insurer has earned an excessive profit. We cannot say under the circumstances that there is no rational basis for the refund mechanism.
We now turn to the question of whether the instant refund order is valid for non-constitutional reasons, i.e., under the plain language of the WCEPL (1981). Appellant argues that the Department erred in applying the WCEPL to profits earned during any part of 1979. The effective date of the WCEPL, as originally enacted, was August *389 1, 1979, but the statute expressly states that the accident year 1979 is the first year to be reported and considered. Section 627.215(3), Florida Statutes. The supreme court in Teachers, 404 So.2d at 742, discussed a similar apparent inconsistency in the MVEPL, as originally enacted in 1977. Teachers first required that the Department not include any part of 1979 in its computation of excess profits, since appellant could be deprived of profits earned from contracts entered into or renewed pri- or to August 1, 1979. Teachers, however, permitted inclusion of 1979 in the Department’s calculations if such inclusion would work to the benefit of appellant. In the case at bar, appellant has denied that it would receive any such benefit.
A further consideration is the formula used by the Department in the instant case, but apparently not present in Teachers. Rather than use all of 1979 in its final calculations, the Department multiplied 1979 totals by ¾2⅛ (based upon the statute’s effective date of August 1, 1979) and used the resulting amount, along with the totals for 1980 and 1981, to calculate excessive profits. There are two faults with using the 6/i2’s formula. First, the Teachers rule would serve to prohibit the Department’s revised amount for 1979, insofar as it includes profits from contracts entered into or renewed before August 1, 1979. Second, the WCEPL expressly requires the Department to calculate excessive profits from data, of “the three most recent calendar years ”. Section 627.215(2)(a), Florida Statutes (1981) (e.s.). Using two and 6/i2’s years of data as was done here, falls short of the three-year statutory mandate. Therefore, the Department’s inclusion of any 1979 profits in its calculations was error. Since the Department’s calculation of appellant’s excessive profits violates the plain language of the WCEPL, the final refund order is invalid and must be reversed.
AFFIRMED in part and REVERSED in part and remanded for further consistent proceedings.
MILLS and ZEHMER, JJ., concur.

. Ch. 79-40, § 128 Laws of Fla., as amended by Ch. 79-312, § 24 Laws of Fla.