ANTOON, Judge.
Brevard County appeals the final summary judgment entered by the trial court in favor of Florida Power & Light (FPL), determining that Brevard County Ordinance No. 95-13 violated FPL’s constitutional right to be protected against the impairment of contracts. We affirm.
FPL planned to construct, operate, and maintain a seven-mile stretch of 138-kilovolt overhead transmission line in Brevard County. The line was to become a part of a multicounty transmission line grid. The route selected for construction of the transmission line included unincorporated areas of Brevard County as well as a 60 by 1,944 foot parcel of property located south of the Timbers West subdivision within the City of Rockledge.
In order to complete the construction of the transmission line, FPL was required to obtain various county permits. FPL anticipated approval of the permits based upon a 1977 franchise agreement it had with Bre-vard County. The franchise agreement was a bilateral agreement in which Brevard County had granted FPL contractual rights to construct, maintain, and operate electric facilities within the unincorporated areas of the county.[1] The agreement was embodied in Brevard County Ordinance No. 77-37 which provided, in relevant part:
AN ORDINANCE GRANTING TO FLORIDA POWER AND LIGHT COMPANY, ITS SUCCESSORS AND ASSIGNS, AN ELECTRIC FRANCHISE IN THE UNINCORPORATED AREAS OF BREVARD COUNTY, FLORIDA, IMPOSING PROVISIONS AND CONDITIONS RELATING THERETO, PROVIDING FOR PAYMENTS BY THE FRANCHISEE TO THE COUNTY; AND PROVIDING AN EFFECTIVE DATE.
⅜ ⅜ ⅜ ⅜ ⅜ ⅜
Section 1. That there is hereby granted to Florida Power and Light Company ... the nonexclusive right, privilege or franchise to construct, maintain, and operate in, under, upon, over and across the present and future streets, alleys, bridges, easements and other public places throughout all the unincorporated areas of *79 Brevard County, Florida ... with respect to electrical construction and maintenance, for the period of thirty (30) years from the date of acceptance hereof ... for the purpose of supplying electricity....
Section 2. That the facilities shall be so located or relocated and so erected as to interfere as little as possible with traffic over said streets, alleys, bridges and public places, and with reasonable egress from and ingress to abutting property. The location or relocation of all facilities shall be made under the supervision and with the approval of such representatives as the governing body of [Brevard County] may designate for the purpose, but not so as unreasonably to interfere with the proper operation of [FPL’s] facilities and service. ...
However, the application process did not proceed smoothly.
In November of 1993, several residents of the Timbers West subdivision, including a Brevard County commissioner, attended a Rockledge city council meeting and objected to the proposed route for the transmission line. The objections were primarily based on (1) the fear of adverse health risks due to electromagnetic fields associated with the transmission line, and (2) the loss in property values due to these electromagnetic fields. A month later, the issue of FPL’s permits was raised at a meeting of the Brevard County Commission. Specifically, a motion was made requesting that the County withhold any permits requested by FPL in relation to the construction of the transmission line. The County Commission passed the motion. FPL responded by instituting a suit for eminent domain against the City of Rockledge as fee owner, and Brevard County, as owner of the nonexclusive easement located on the property. Brevard County later requested that it be dropped from the suit because the proposed construction did not interfere with its drainage easement.
In February of 1995, the Timbers West residents again attended a Brevard County Commission meeting and spoke in opposition to the construction of the transmission line. After hearing from the residents, the Commission directed the county attorney to draft an ordinance regulating the construction of transmission lines in Brevard County which could then be used by the City of Rockledge in defending against FPL’s eminent domain suit. The Commission also instructed its attorney to expedite the drafting of the ordinance so that it could be used by the City of Rockledge at a March court hearing in the eminent domain suit.
As directed, the county attorney drafted Brevard County Ordinance 95-13, which authorizes Brevard County to decide if, where, and how transmission lines are to be constructed, operated, and maintained. In this regard, the ordinance provides in relevant part:
AN ORDINANCE OF BREVARD COUNTY, FLORIDA, CREATING CHAPTER 31, CODE OF ORDINANCES OF BREVARD COUNTY, FLORIDA, ENTITLED “ELECTRICAL TRANSMISSION LINES,” PERTAINING TO THE PERMITTING OF ELECTRICAL TRANSMISSION LINES AND CORRIDORS NOT OTHERWISE REGULATED UNDER STATE LAW; ESTABLISHING A TITLE, DEFINITIONS, PURPOSE, PERMITTING PROCEDURE, APPLICATION REQUIREMENTS, CRITERIA FOR PERMIT ISSUANCE, JURISDICTION OF OTHER REGULATORY BODIES OR AGENCIES, ENFORCEMENT AND REVOCATION; PROVIDING FOR SEVERABILITY; AND PROVIDING AN EFFECTIVE DATE.
WHEREAS, the state statutes requiring certification of electrical transmission lines pertain only to those designed to operate at 230 kilovolts or greater; and
WHEREAS, the state certification process excepts certain transmission lines designed to operate at 230 kilovolts or more from certification; and
WHEREAS, the exemption provision in state certification laws expressly preserves local permitting authority for exempt transmission lines and the County has, in its franchise agreement with Florida Power & Light Company, reserved the right to approve the location of electrical transmission and other facilities; and
*80 WHEREAS, the Florida courts have recognized the potential for diminishment of property values due to ‘fear’ of transmission lines located adjacent to residential property; and
WHEREAS, the County recognizes that the location of electrical transmission lines has the potential for aesthetic blight and for adversely affecting property values and the health, safety and welfare of the public as well as the use and maintenance of public facilities, easements and rights of way;
WHEREAS, the definition of development, as set forth in Chapter 163, Florida Statutes, does not include installation of transmission lines or other power lines and, therefore, this ordinance does not affect or constitute a land development regulation.
NOW, THEREFORE, be it ordained by the Board of County Commissioners of Brevard County, Florida, that
[[Image here]]
C. Sec. 31-3. Purpose.
This chapter is enacted under the charter power of the County for the purpose of providing necessary regulation, conditions and provisions which shall apply to:
(1) The granting and issuance of permits for the location of electrical transmission lines within the incorporated and unincorporated limits of the County; and
(2) The implementation of franchise agreements between the County and electric utilities where the County’s approval is required for location or relocation of utility facilities; and
(3) The providing of reasonable and suitable protection and control over the use of County-owned easements and rights of way for installation of electrical transmission lines; all in the interest of the public health, safety and welfare of the citizens and inhabitants of the County.
The ordinance further provides that any electric utility company “desiring to install and operate any electrical transmission line in the ... County shall apply to the Board for a corridor permit pursuant to this chapter.” The ordinance also sets forth specifics concerning the terms of the application process and the criteria for permit issuance. Specifically, the ordinance states that a permit may be issued upon a demonstration that the proposed electrical transmission line complies with applicable use regulations and land development regulations; will not conflict with county support services; will not materially impair the county’s existing use or reasonably foreseeable use of a right-of-way or a planned expansion or maintenance of an existing county facility or public works project; and will not materially and adversely affect property values of existing adjacent residences. On March 14, 1995, the Commission passed the ordinance.
Once the ordinance was enacted, FPL filed suit in the circuit court seeking declaratory relief. In its complaint, FPL alleged that the ordinance breached the terms of its franchise agreement with Brevard County, and was unconstitutional because it unreasonably impaired FPL’s contractual rights under the franchise agreement. Both FPL and Bre-vard County filed motions for summary judgment. After conducting a hearing, the trial court entered a written order granting final summary judgment in favor of FPL, concluding that Brevard County Ordinance No. 95-13 violated the impairment of contracts clause of the state and federal constitutions:
Ordinance 95-13 adopted by Brevard County on March 14, 1995, substantially and materially changed the contract (franchise) rights between the parties by requiring Plaintiff to obtain a permit from the Defendant; and in Section 31-5 of the Ordinance, the Defendant established new criteria for permit issuance by adding that County disapproval of a permit could be based upon its finding that the Transmission Lines would materially and adversely affect real properly values of existing or adjacent residences, or such lines would materially or substantially impair the County’s existing use of drainage easements, or such lines would materially impair a planned county expansion of public works, or such lines would violate applicable development regulations concerning noise, emergency vehicle radio interference, or such lines would interfere with *81 other county support services. Such arrogation by Brevard County of these additional criteria as to the Plaintiffs siting of transmission lines, particularly as it relates to affecting real property values, over and above the single criteria in the franchise which related only to impact on traffic, is unreasonable, without justification and directly impairs the contractual rights between Brevard County as one of the contracting parties and the plaintiff. This use of its police power by the County is not justified in balancing its method of implementation, particularly as the history of Ordinance of 95-13 is so prompted and promoted in its focus on the two-thousand feet of transmission line in Rockledge, Florida.
Brevard County appeals this ruling, arguing that the ordinance is not subject to attack under the impairment of contract principle because the County cannot, as a matter of law, contract away its police power originating in Article I, Section 10 of both the United States and Florida constitutions. Stated another way, the County maintains that, since it is prohibited from contracting away its police power to protect the health, morals, and safety of the public, its franchise agreement with FPL embodied in Ordinance 77-37 is not protected from impairment under the contract clause of the state or federal constitutions. We disagree.
 The County is correct that the laws of a municipality which are reasonable and necessary to secure the public’s health, safety, and general welfare are constitutional even if the laws impair the obligations of a private contract. Yellow Cab Co. of Dade County v. Dade County, 412 So.2d 395 (Fla. 3d DCA 1982), rev. denied, 424 So.2d 764 (Fla.1983). However, contrary to the County’s claim, the government’s authority in this regard is not unrestrained. Rather, laws which unreasonably and unnecessarily impair the obligations of a private contract can be struck down as being unconstitutional. Pomponio v. Claridge of Pompano Condominium, Inc., 378 So.2d 774 (Fla.1979).
In Pomponio, our supreme court discussed the method of determining just when government impairment of private contracts is permissible. In this regard, the court explained that, when government regulation impairs the rights of parties to a contract, the duty is on the trial court to weigh the degree of impairment against “the evil which [the regulation] seeks to remedy.” Id. at 780. This analysis “requires a balancing of a person’s interest not to have his contracts impaired with the state’s interest in exercising its legitimate police power.” U.S. Fidelity & Guaranty Co. v. Department of Insurance, 453 So.2d 1355, 1360 (Fla.1984). There must be a significant and legitimate public purpose behind the enactment of the regulation, and the regulation must not unreasonably intrude into the parties’ bargain to a degree greater than is necessary to achieve the stated public purpose. Pomponio, 378 So.2d at 780.
In its clear and thorough summary final judgment order, the trial court aptly recognized that Ordinance 95-13 substantially and materially changed FPL’s rights under the franchise agreement. In this regard, the trial court acknowledged that the only criterion for the location of a transmission line under the parties’ franchise agreement was that the line be located and erected so “as to interfere as little as possible with traffic over said streets, alleys, bridges, and public places, and with reasonable egress from and ingress to abutting property.” However, Ordinance 95-13 materially altered this criterion by requiring that FPL first obtain a county permit before constructing a transmission line. Furthermore, the ordinance set forth additional criteria for the issuance of a permit, allowing Brevard County to disapprove the issuance of a permit for a variety of reasons other than those relating to traffic. For example, Brevard County is authorized ■ to disapprove a permit based upon a finding that the proposed transmission line would adversely impact the value of adjacent residential property, impair the County’s drainage easements, or impair planned expansion of public works. Ordinance 95-13 also permits Brevard County to deny an application for a permit upon a finding that the transmission line would violate development regulations concerning noise or emergency radio interference, or that the line would interfere *82 with other county support services. Interestingly, the narrowly stated purpose for the ordinance was the protection of Brevard County residents from the potential dimin-ishment of property values, aesthetic blight, and adverse health effect caused by the construction of transmission lines adjacent to residential property. Relying on Ponvponio, the trial court properly concluded that Ordinance 95-13 unreasonably intrudes into FPL’s contractual rights to a degree greater than was necessary to achieve this stated purpose. Accordingly, we affirm the trial court’s order.
AFFIRMED.
COBB and GRIFFIN, JJ., concur.

. Although it is not germane to this opinion, we note that neither party argued that the 60 by 1,944 foot parcel lying within the City of Rock-ledge was within the incorporated area of the County and thus not subject to the provisions of the 1977 ordinance.